16-1663 Mr. Shagan and Mr. Leo. Good morning, your honors. Craig Shagan for Petitioner Jose Juan Chavez-Alvarez. Do you wish to reserve time for rebuttal? Five minutes, if I may, your honor. I believe the briefs in this matter by the Attorney General and ourselves have sufficiently narrowed the issues so that there are two points really that seem to be in controversy. As to the first argument, the issue to me turns on what defines a crime. I think under only Congress has the power to create a crime. And the crime that was created by Congress was the traditional crime, really the ancient definition of sodomy. And that is an unnatural copulation between people of the same sex, opposite sex, or with an animal, whether consensual, non-consensual, by force, by fraud, with or without consent. Congress delegated authority to the president in military matters and the manual on courts martial seems to have a different definition. So isn't one of the questions whether we take that into account or not when trying to figure out whether we have a divisible or indivisible statute? That is the question. And my response to that is Congress delegated to the president the power to punish. He didn't delegate to the president, nor do I think they can, the power to define a crime. The definition of the crime is in the statute. The punishment for the particular circumstances under which that crime was committed is in the manual for court martial, the punitive elements created by the president. Now if I lose on that... Those elements must be established beyond a reasonable doubt. So why doesn't it make sense? You're saying I'm wrong on that? No, no argument there. In fact, we can see that... Why doesn't it make sense then, or doesn't there seem to be some common sense appeal to the conclusion of the BIA that because these elements must be proved beyond a reasonable doubt, or these sensing factors that they become actual elements of a crime? Well, common sense and immigration law don't always coincide. You won't get any argument from us. However, I would point out that the categorical approach, which is what the Supreme Court and this court follows, specifically states, and Mathis reinforces what was previously decided by the court in De Camp, that you look to the elements that is that which defines the crime. The crime was completed upon the commission of sodomy by whatever means. The punishment is a subsequent factor, and yes, I suppose you could say, come on, since you have to prove it beyond a reasonable doubt, why don't we just go with that? And the reason is because you're opening up a hornet's nest of analysis. I mean, lots of things must be proven beyond a reasonable doubt, including the means by which a crime is committed sometimes, as well as the elements. Or, in fact, it's been found beyond a reasonable doubt, even if they're not the elements. And you would then find courts looking to whatever they could, the immigration courts looking to whatever was out there to decide what the guy did and not what he was convicted of. And specifically here, consider what would happen if, for instance, state sentencing commissions, you know, provide definitions of punishment that are based on the circumstances by which it is done. Where basically does it end, and how much are we going to have to deal with in immigration court, which is really where the rubber meets the road in 99% of the cases, to try to explain our position? But isn't the government's position that the military justice system is exceptional, and so it's just different from everything else, and so we have a different set of rules? I so agree. And, in fact, I subscribe to the vaguest view of military law. What happens in the military, I think, should stay in the military. There has never been an opportunity, or there's never been an occasion, which I have read, where Congress has really tried to parse through the relationship between the immigration laws and the military laws. As I point out in my brief, the first code of military conduct is that I am an American. I am fighting for my country. I'm not a Mexican-American fighting for your country. And yet we treat aliens, when they're in uniform, in every respect as nationals, under the Status of Forces Agreement, which Mr. Chavez was subject to when he was in Korea. If they're captured, we don't say, okay, Mexico, you negotiate with the enemy to get them back. And yet this one cardinal sort of issue has never really been addressed, because historically the duty to defend a country belongs to only its nationals. And yet, in America, we have always drafted our lawful permanent residence. And I'm not suggesting that this Court resolve that conflict. I would just like it if Congress addressed it, because we really don't know what their thinking is on this. They've never come out and said, yes, we understand that you've served and you were wounded, and as a result of your wounds you may commit a crime which renders you deportable. We don't care. They just haven't addressed it. They've been silent. And perhaps they should address it. But to go beyond what is in the statute and what the Supreme Court has delineated we should be articulating for purposes of the categorical approach, particularly in the military area, seems to me dangerous. And I would also point out that the clear rule of statutory interpretation that the Supreme Court has given us is one of lenity. We're not supposed to read ambiguities in the statute in favor of deportation, let alone have constructive statutes, which is essentially what is being argued for here. So I would suggest that, yes, it is different, but that very difference is why we should leave it alone. And I would also point out that the Military Court of Appeals comes to the same understanding as to the distinction between statutory elements versus punitive circumstances as I'm arguing. Well, there seems to be some confusing decisions in that regard. Within the Court of Military Appeals? Yes. I think Thomas resolves it. That is their highest court, and they were correcting the lower court's confusion, and they even said we understand it's confusing, but this is the way the law is. So I think the elements of the offense are in the statute, and that's where the Supreme Court has told us to look at. Can you briefly address the question of whether there are two crimes? Yes. Or a single. A debita is the correct case to look at, and I see it as supporting my position. What standard of review do we apply to the determination by the IJ and then the BIA that these are separate acts of crimes of moral turpitude? Well, it's a mixed question of law and fact. So I would say it's a de novo review as far as the law is to those facts, and I don't think there's a dispute as to what the facts are. So, I mean, putting it simply, if I rob a bank and I run out the door with the loot and the police are chasing me down the street, I've committed the crime of robbery and I've also committed the crime of the looting. Do they not arise out of the same criminal conduct or criminal misconduct, as the statute says? I mean, it seems to me that this is no different. And if you confess seven hours later? And seven hours later? You confess. You confess. Or do you not confess? We have a duty to confess in the civilian world. The military world is a bit different, isn't it? But I would say that the seven hours later, we don't know exactly when he provided the denial. All we know is when he was based on the record. We know he was not sober either. We know he didn't have counsel. And it's the government's burden to prove, not ours, that these arose out of two separate criminal events. So it seems to me that a hallmark of having two separate offenses is having an ability to soberly reflect and to disassociate yourself from the crime. I think in the panicked hours of between 10 and 4 a.m. or 5 a.m., without advice of counsel and having spent a night in excessive drinking, I don't think that is the type of setting that I would suggest would show that there were two – Now, Lisa, I'll say one other thing. There's no justice without truth, and there's no place harder to find truth than in the sexual conduct of people. And even when you are sober, it is astonishing to me how two people involved in such an intimate act can sometimes have two very different views as to what just happened. And I think anybody who's practiced law and seen these types of cases has an appreciation for just how muddled people's thinking can be. And I certainly think without somebody directing him and telling him where his liability would be and would not be, a denial, while it was found to be a crime, it was not the kind of disassociated thinking or disassociation from the original act that would render it a separate offense completely apart from the original. Nor would it have ever happened but for the original offense. And I would reject the government's argument that because they didn't arise in the same thought process, that that makes it necessarily separate crimes, because that's exactly what the BIA rejected. Is that the standard, though, it never would have happened but for? Is that the same as saying the natural flow of consequences? No, but it's part of it. I mean, I think particularly in this context, it's part of it. So you're asking for a different view. You're not asking for additional fact-finding on this. I mean, I don't know what you're doing. No, it's the government's burden to prove, and they put nothing on. I mean, the judge just found based on the record, the same record that you're looking at, that, oh, these are two separate offenses. But it was the government's burden to prove by clear and convincing evidence. I'm not clearly convinced. I think if I was the judge, I would not be clearly convinced, because given the wee hours of the morning, the proximity of time, the uncertainty as to when he actually made the false statement, the fact that the false statement he made was actually for intercourse, and the charge of rape he was found not guilty of. So I'm not really sure what happened in that room, nor was there any inquiry made by the government. They never examined him, and they could have in court. All right. Thank you very much. We'll hear from Mr. Lee. I'll get you back on the rebuttal. May it please the Court, good morning. Attorney Sabatino, FLEO, on behalf of the Attorney General of the United States. Let me just ask a question at the outset that just jumps out at you. How could a sentence enhancement factor, which is discretionary and applied by a judge at sentencing based on a preponderance of the evidence, create a separate crime of conviction? I think in this particular circumstance, as Your Honors alluded to, the Uniform Code of Military Justice is such a unique mechanism of justice in which, under Articles 56 and 36 of the UCMJ, Congress has delegated specific powers to the authority, including under the Constitution as far as the commander-in-chief of the military services, and that taking into account, I think what we need to be clear in is we have to take into account what Justice Kagan said with respect to Mathis v. United States. And Mathis v. United States unequivocally states that when looking to a statute of conviction, making the determination of whether or not that statute is divisible, requiring application of the categorical approach, or indivisible application of the categorical approach, or divisible regarding application of a modified categorical approach, you have to look at the jurisdiction's application of that statute. But coming back to my initial question, it seems like you're asking us to walk into the wire patch of separation of powers. The Congress has given the President the ability to deal with the manual for courts martial for sentencing, for punishment, not to define a crime which only Congress can do. We can't do, and the executive can't do. So I'm rather reluctant to enter into that thicket. I think a reading of the UCMJ, specifically Article 36, unequivocally sets forth that the executive has the authority to implement rules and rules of evidence to promulgate rules with regard to the Uniform Code of Military Justice. But even the Court of Criminal Appeals in Thomas in 97 tells us that these are not extra elements. They are of a crime. They're just sentencing enhancements. I think your Honor's initial indication with regard to whether or not there's some kind of disparity with regard to whether or not they are in fact elements, if you look and read the manuals for courts martial, what the manual for courts martial in Part 4 specifically sets forth what are the elements. And in this particular case, for purposes of sodomy, it sets forth what the elements are. And then stepping back again, opposing counsel mentioned this hornet's nest. But we have to read this conviction within the context of Mathis v. United States. And Mathis v. United States says we have to look to what the jurisdiction states about burdens of proof and whether or not these particular statutes can be carved up with regard to differing crimes. And one of the analyses that Justice Kagan puts out is that if there are differing punishments for a particular crime, that ergo becomes, in essence, a differing crime for purposes of an analysis under Mathis v. United States. And I know that was under the Armed Career Criminal Act, also applicable under this court's ruling in Rojas with regard to the INA. And I think this hornet's nest is really something that we're placed into as a result of Mathis v. United States. And Mathis v. United States says unequivocally, look to authoritative sources of law in the jurisdiction in question. And looking into the authoritative sources of law in the military context, I think we're able to see unequivocally that these particular elements, specifically with regard to this conviction before this court, is by force and without consent. So how do I get around Thomas then? If it's this particular area of law, military law, and the Court of Criminal Appeals has said that the manuals for court-martial deals with a scheme for punishment, specifically stating that it does not impute extra elements of a crime into the statute of conviction. I think with regard to Thomas, it doesn't speak specifically with regard to elements for purposes of the conviction, as does United States v. Weymouth. United States v. Weymouth had cited in our particular brief talks that, in essence, if you read the statutes as they are under the Uniform Code of Military Justice, if you solely cite to the statute for purposes of charging individuals with an offense, that those particular statutory language would not satisfy due process notice requirements, but for purposes of placing a particular defendant in the military, we would call them the accused, for purposes of the due process clause and purposes of noticing, getting an idea of what that particular individual is charged with. As a result, we are compelled to go to what the President has been delegated with power to do and look toward the elements to make that determination. Remember, with regard to the Uniform Code of Military Justice... Well, the statutory crime to charge is sodomy, right, under 125? Yes, Your Honor. And under Lawrence, is that a crime any longer thought to be one of moral turpitude? Under Lawrence v. Texas, consensual sodomy is not a crime at all, regardless of whether it's a crime involving moral turpitude. And our analysis would be that if this Court would look solely to the language of Article 125, which punishes consensual, non-consensual conduct, and looking only to that language and factoring in Mathis v. United States and Justice Kagan's analysis, that that would be alternative means for conviction of what? One statute, which is sodomy. As a result, it would not be a crime involving moral turpitude if this Court would look solely to the plain language of Article 125 of the Sodomy Defense. In effect, am I not constrained by the statute and not a sentencing? That's the whole crux of this case. You've got sentencing enhancements, which deal with, among other things, forcible sodomy. But that isn't in the statute. You answered the question very straightforwardly, relating to 125. My question comes back to, in effect, separation of powers. I don't see how the executive can usurp, even in the military context, what Congress clearly only has the power to do. But Congress also has the power to delegate to the executive in this particular environment, which is specifically, we have to recall that even when we step back with regard to separation of powers, we look within the United States Constitution, the document that really could be at issue here. And we state unequivocally that the President of the United States is the Commander-in-Chief of the United States military. It says Army and Navy. It encompasses the entire military. And as a result, those powers, in and of themselves, as the Commander-in-Chief, are, in essence, delegated to the executive for purposes of the military. But for purposes of punishment, is that not correct? There's no delineation within the United States Constitution for purposes of punishment as the Commander-in-Chief. The Manual for Courts Martial, isn't that really for punishment? My reading of MCM, specifically with regard to Article 36 of the UCMJ, I think can be read quite liberally to promulgate rules with regard to the Uniform Code of Military Justice. Is there any specific language in the Manual for Courts Martial that indicate the President was intending to define elements of a crime? Other than in the Manual for Courts Martial itself, which delineates specifically the elements of the offense, it states unequivocally that these are, in fact, the elements of the offense. But under the Uniform Code of Military Justice, if I can turn to Article 36, President may prescribe rules, pre-trial, trial, and post-trial procedures, including modes of proof for cases arising under this chapter, tribal and courts martial, and other military tribunals, and other procedures. So as far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States District Court, but which may not be contrary to or inconsistent with this chapter. That sounds like procedural. How do you conduct process? We're talking about the actual definition of the elements of a crime. Obviously, my interpretation would be more broader than that under Article 36. However, I think the language in and of itself under the Manual for Courts Martial, I don't think you can get any more specific than that, unless this Court is inclined to say that the President's delegation of authority does not include that list of elements, which are set forth within Part 4 of the Manual for Courts Martial, because that's a breach of his responsibility and his powers under the Constitution of the United States. Because if you look at, they're in separate paragraphs under the Manual for Courts Martial, Part 4. Elements, and then aggravating factors. Elements, what must be proven beyond a reasonable doubt, or what must be proven. It says by force, without consensus. There's some situations with regard to the age of the particular victim. And then subsequently, does it go on in the Manual for Courts Martial, talk about sentencing enhancements under Part 4. Now, they're in the same paragraph, but it also lists the statute. It's literally the next paragraph after the statute, which by a pure reading, right, of a pure reading of a black letter, what is in that, it lists those particular items as elements under the UCMJ. Am I correct that Congress amended Article 125 to restrict it to forcible, non-consensual acts? And doesn't, if the President had already done it, why did Congress need to do it? Because, well, which is a good question, because I think what the situation arises, that when individuals are charged with Article 125, the military courts now put into effect this kind of long line of questioning within military courts to get it outside of constitutionally protected activity. And what Congress was doing in this regard was basically just clearing it up to ensure that there's nothing on the books with regard to the illegality of consensual sexual conduct with regard to sodomy. And that, I think anyone in this courtroom would agree with that sort of course of action. It did take them some years to do that. They did not do it until 2014, Congress. It takes Congress a long time to do a lot of things. Yes, Your Honor. It almost seems like what this case comes down to is the opinion of Justice Kagan and Mathis versus the dissent of Justice Alito. I mean, it's, you just look at the elements, going to be black and white. Don't go beyond them, no matter what you think you know. And Justice Alito is saying it's like taking that road trip. You start off the wrong way and you end up about a thousand miles in the wrong direction because he's arguing, in effect, there's been the death of common sense. And I would concur, Your Honor. And, you know, however, we are bound by Mathis, and this Court has interpreted, has looked at Mathis in the College Chain Cruise matter as well and sort of interpreted Mathis, I think, to our benefit as the Attorney General with regard to however convoluted it is, are the rules that we're bound by at this particular point. And, yes, it is a proverbial hornet's nest. Unfortunately, a hornet's nest that we're required to get through. Could you address, I only have a few minutes left, the waiver of inadmissibility argument that was raised by the petitioner? Oh, I'm at 212H, but that's not presently before. I guess I can address this. Well, they want us to remand. If we agree with your position, they still want a remand so that that matter can be addressed. Well, I think what he, and I could be incorrect under his waiver for 212H. From my understanding of reading the briefs, it was set aside that he wants to go back, and if he is no longer convicted of a crime involving moral torpitude, he now wants to apply for a cancellation of removal and have that second opportunity to apply for cancellation of removal. And our position is that it serves this court no purpose to remand him for him to apply again for cancellation of removal. Number one, because he's already had the opportunity to apply for it, and he was ineligible for it. Subsequent to the remand of this court in the Third Circuit in 2015 in Chavez 1, he never reapplied. And it is the burden on the alien to apply for cancellation of removal. And subsequent to that, if he had felt as though he was eligible for cancellation, he should have at that particular time. And number three, cancellation of removal is a discretionary form of relief at the end, meaning immigration can deny a cancellation of removal request or application for cancellation of removal and adjustment of status with the exercise of discretion. So there's no per se eligibility will be granted cancellation of removal, and that's my understanding of what his argument is with regard to the remand in that particular matter. I just wanted to step back. I know I don't have much time here. This is not the form now to collaterally attack these convictions below. I think a bulk of counsel's argument is an attempt to collaterally attack the false official statements or the sodomy offense. Let us recall that this is an individual that was found guilty, yes, in accordance with his pleas, represented by counsel and having pled guilty. It sort of leads to the next question. After he served his 18 months, was it a decade, a full decade later before the immigration authorities came after? It was 10 years, Your Honor, and I can only surmise as to the very nature of not all these convictions with regard to individuals, whether or not they're illegal immigrants or whether or not they're LPRs. Sometimes these convictions work through the system, and it takes a while for ICE to know that this conviction occurred. And once they're put on notice that it occurred, I'm sure they took action. But I concur it took close to 10 years. The filing of the notice to appear was in 2012. I believe he finished serving his sentence in 2002 or 2003. If we look at his prayer for relief and think he did ask for a remand to consider the cancellation of the removal, then we could do that in any event, is that right? Your Honor, it is within your power to do so. My argument would be even if you would agree with my argument and you carved out an issue with regard to remanding for purposes of reapplying for cancellation, I suppose I don't see any hiccup to that. Obviously our position would be it's unnecessary because at this particular time he had the burden to do so and he failed to do so. And I understand the complexities involving the Court of Military Justice and opposing counsel's concerns with regard to the military. I can only tell you that the military is unique because it is, in essence, the military. And the military punishes individuals for failing to go to work, and you get convicted and get put in the brig for that. I mean, it is a very unique system. And at the end, it's a unique system that must be treated differently, and it doesn't open up a Pandora's box, as I think opposing counsel mentioned, with regard to think of a state sentencing commission doing that. No, no, because we can't look back to the Constitution of the United States as to what the authority of the state sentencing commission is. We can, for purposes of the President being the Commander-in-Chief. And if there are no further questions, that concludes my presentation. Thank you very much. Thank you, Your Honors. Mr. Shagan. Just a few things very quickly. First, let me defend the wisdom of the Supreme Court in Mathis. The idea of having the categorical approach applied a certain way has with it an administrative element that may be missed by the average person. When we go into immigration court, we don't get to retry cases. We don't get to say what happened. What we have is basically the raw record. And particularly now, after Padilla, with the duty of defense counsel to advise clients as to the immigration consequences of their plea, having a level of certainty, knowing what it is that you have to analyze and then analyzing it, it affects the entire system from the entry of a plea or the negotiation of a plea right up until the end. And so taken in that context, there is a great value to having the kind of specificity, even if it may seem at times a bit arbitrary, to the Mathis analysis. There's a lot of arguments both ways. I mean, clearly the argument of Justice Kagan and the majority of the court is, look, we need to make these things so we understand what they are so we're not continually diving into the weeds trying to figure out what went on. And I get it. And that was the position that won. I don't think it is completely without common sense, I guess is my point. I see the rest of it. I was just repeating in effect what the dissent was saying, that we've taken a wrong turn way back 25 years ago in Taylor or whenever, and we just keep going on that path whether you agree or disagree. Yeah. And the other thing, I just want to clarify the position on relief. The standard relief that you get in an immigration court if you're a long-term permanent resident is cancellation of removal. There's no mystery about that. It was pretermitted at the immigration court level because he was found by the immigration judge to have committed an aggravated felony. This court ultimately overruled that, and it was remanded to the BIA. The relief was there, and I was frankly surprised that it wasn't remanded for that. But in any event, I think the other two issues are dispositive of the case. And one last point I would like to make is that there is a published opinion in this case from the first appeal, which remains except for the area of the aggravated felony finding, law that is still being cited to. And so to the extent that they've determined in that opinion that anything that you prove essentially beyond a reasonable doubt should be counted as an element of the offense remains law. And we will hear that in the immigration court. And so clarity, particularly in the military context, would not only be helpful to me, but it would also be helpful to the judge advocates who have to think about what are the consequences if they're advising their clients to take a plea. So I do see this case as an important case for guidance as well as, I hope, for the relief of the client. Are you saying there was no waiver? No waiver?  Oh, no, I don't think there was a waiver. I think the court, the BIA, understood what the request was. I don't think an argument had to be made in that regard because it's something that I think would be apparent to them on the face. In the future, I will be much more articulate in making that position.  Mr. Leo mentioned or attempted to distinguish Thomas and your perception of how Thomas ruled is what? I think Thomas quite clearly ruled that the statutory elements are the criminal elements of the offense and the circumstance-specific means by which a crime was committed goes to the enhancement of punishment or to punishment. The president could have punished all sodomy by life in prison under the delegation. They broke up sodomy into various categories for how they wished to punish it, but unlike in Mathis, you're not looking at a punishment reflective back to find out what section of a statute you were convicted under. The sodomy statute is indivisible, and so that's what we're looking at. Now, as I pointed out in my brief, Congress could correct this, and indeed they have. I mean, they've changed the statute. So what we're looking at is the ancient definition that was applied to my client, and I believe for the arguments I've given that that is not a CIMD and that the offenses obviously, I would also argue, arose out of the same scheme of criminal misconduct. Thank you very much. Thank you to both counsel for extremely well-presented arguments. Thank you, Your Honor. It's a pleasure having both of you here.